**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA             )

v.                                                      )        CRIMINAL NO.04-00249-CB

DONALD LOVET HARRIS.                )

<u>**ORDER**</u>

On April 3, 2007, this matter came before the Court for a hearing on defendant's Motion to

Dismiss, as amended. (Docs.  14 & 18.) As grounds for dismissal, defendant asserts that the

government's pre- and post-indictment delay violated his constitutional right to a speedy trial.  For

the reasons discussed below, the Court finds that the defendant's constitutional right to a speedy

trial has been violated.

**Facts** [1]

On or about July 31, 2002, during the inventory of a car driven by defendant Donald Lovet

Harris, Mobile police officers found a gun in the car's glove compartment.  Both Harris and his

passenger, Willie Brown, were convicted felons.  Two years and five months later, in December

2004, a federal grand jury returned an indictment charging Harris with possessing a firearm after

having been convicted of a felony in violation of 18 U.S.C. § 922(g).  On January 6, 2005, the

Clerk of Court issued a warrant for Harris's arrest.  Following the issuance of the arrest warrant,

officers with a federal task force entered information concerning the warrant into NCIC, a national

law enforcement database.  Federal task force agents attempted to locate the defendant at the

---

[1]These facts are taken primarily from the testimony presented or evidence proffered at the
evidentiary hearing, although some other non-critical, background information has been gleaned
from the parties' pleadings.

address listed in the arrest records[2] and by checking various databases including credit reports, power company records and a statewide law enforcement database.  Initially, Sgt. Soulier, a member of the Mobile Police Department assigned to the task force, contacted the defendant's mother once and contacted his father once in an attempt to locate him.[3]  Defendant's mother indicated that he was in and out of her house and that she did not know where he was living.

While the arrest warrant in this case was outstanding, defendant was arrested on a new state court charge.  Apparently, he pled guilty and as a result was placed on supervised release. For some reason–probably because the defendant's name and date of birth were incorrectly entered into the system after his more recent arrest–the outstanding arrest warrant in this case was not discovered.[4] In January 2007, using an Alabama law enforcement database known as Alacop, Sergeant Soulier discovered that the defendant was under state supervision.  She then arranged for his arrest on the outstanding warrant, and defendant was arrested on February 15, 2007.  An arraignment order was entered requiring that all pretrial motions be filed prior to February 26th.  Defendant filed a notice of intent to plead guilty in this case, but on March 19th at the guilty plea hearing, he changed his mind. On that same date, defense counsel filed the motion to dismiss.

At the hearing, defense counsel proffered that he was able to locate Willie Brown's mother from whom he obtained Brown's telephone number.  Counsel's investigator has spoken with Brown by telephone, but Brown refuses to divulge his location.  If called to testify, Brown will say

---

[2]No specific evidence was offered to describe the extent of the attempt to locate the defendant at the address in the arrest records, which by that time was 2 ½ years old.

[3]It was unclear whether this contact was in person or by telephone.

[4]Special Agent Tolbert of the Bureau of Alcohol, Tobacco and Firearms testified that officers checked the system after learning the outstanding arrest warrant had not been discovered. The warrant showed up both under defendant's name and under his social security number.

that the gun belonged to the defendant, Donald Lovet Harris.[5]

**Discussion**

The Sixth Amendment guarantees an accused the right to a speedy trial–once he has been arrested or indicted. *Barker v. Wingo*, 407 U.S. 514 (1972).  The Fifth Amendment comes into play when a defendant claims that he has suffered prejudice due to the passage of time between the time of the crime and the time of his arrest or indictment. *United States v. Marion*, 404 U.S. 307, 322 (1971).   Below, the Court analyzes the defendant's claims applying the appropriate standards.

**Pre-Indictment Delay**

To succeed on a motion to dismiss based on pre-indictment/pre-arrest delay, a defendant must show that the delay "(1) [was] the product of a deliberate act by the government to gain a tactical advantage, and (2) caused the defendant actual, substantial prejudice." *United States  v. Suarez* No. 05-15687, 2007 WL 200915, *5 (11th Cir. Jan. 26, 2007) (citing *Marion,* 404 U.S. at 324.)  The Court need go no further than the first prong.  Since there is absolutely no evidence that the delay was a deliberate act on the government's part, the defendant cannot succeed on a Fifth Amendment based on pre-indictment delay.

**Post-Indictment Delay**

In *Barker*, the Supreme Court set forth "criteria by which the speedy trial right is to be judged." *Id.* at 516.  Those are: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial and (4) prejudice to the defendant. *Id.*  The Court must make an inquiry into the first three factors and determine the weight to be given each. *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006).  If those three factors weigh heavily against

_____

[5]The defense asserts that cross-examination of Brown as a hostile witness would actually be favorable to the defendant because the jury could, by disbelieving Brown, infer that Brown, not the defendant, possessed the firearm.

the government, then the defendant need not show actual prejudice to succeed on his motion. *Id.*

Initially, length of delay is a "triggering mechanism" in that no speedy trial inquiry is necessary unless the delay is long enough to be "presumptively prejudicial." *Id.* If it is not sufficiently lengthy, then no further inquiry is made. *Id.* If it is, then this factor must be weighed along with the other three criteria identified in *Barker.* Generally, a delay of one year is sufficient to trigger a speedy trial inquiry. *See United States v. Doggett*, 505 U.S. 647 (1992). Since the delay between indictment and trial in this case is two years and four months,[6] further analysis is required. The extent to which the delay exceeds the bare minimum necessary to prompt inquiry is significant because "the presumption of prejudice intensifies over time." *Id.* at 651. Furthermore, the significance of the post-indictment delay is even greater in this case because the pre-indictment delay (*i.e.*, between the crime and the indictment) was also lengthy. *See Ingram* at 1339 (pre-indictment delay may be considered in assessing weight of post-indictment delay). In all, more than four and one-half years elapsed between the incident giving rise to the indictment and the date of trial. Thus, the length of delay weighs heavily against the government.

The second factor is the reason for the delay, with "different weights . . . assigned to different reasons." *Id.* The *Barker* court identified three types of reasons and the varying weights to be assigned to each. Deliberate attempts by the government to delay the trial and hamper the defense are weighed heavily against the government. *Id.* On the other end of the spectrum, a valid reason for delay provides justification for delay. *Id.* at 531. In the middle of the continuum is government negligence, which "should be weighted less heavily [than bad faith] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* The delay in this case was not intentional, but it

---

[6]Defendant was indicted in December 2004. The case is set for trial in April 2007.

cannot be said that law enforcement was actively attempting to apprehend the defendant.  From the evidence presented, it appears that officers initially made a slightly more than minimal effort to locate the defendant.   The only active attempt to locate the defendant was Sgt. Soulier's contact–and whether that contact was even in person is unknown–with his parents, two people who were probably the least likely to assist.  The remainder of law enforcement's initial efforts to locate the defendant were passive.  They checked databases in an apparently fruitless attempt to find the defendant's address, and they listed him in NCIC.  The government's evidence skipped from its initial efforts to locate the defendant in early 2005 to January 2007, when Sgt. Soulier ran his name through a database and discovered that he was under state supervision.  From the lack of evidence, the Court must presume that no efforts to locate and arrest the defendant were made during that nearly two-year period.   It turned out, of course, that the defendant had not absconded, nor had he been hiding.  He was, in fact, right under the noses of law enforcement the entire time.  He had been arrested in the interim and was under state supervision.   In light of the government's negligible initial efforts to locate the defendant and its non-existent efforts over the ensuing two years, this factor weighs against the government.  When the unexplained two-year-and-four-month delay in seeking the indictment is also taken into consideration, this factor weighs heavily against the government.  *See Doggett*, 505 U.S. at 657 (official negligence is weighed more heavily against the government with the passage of time because "our toleration of such negligence varies inversely with its protractedness.")

        The third factor is the defendant's assertion of his right to a speedy trial.  "Whether and how a defendant asserts his right" is important.  *Id.*  Failure to assert the right makes it difficult for a defendant to prevail on a speedy trial claim.  *Id.* at 532.  "The defendant's assertion of his speedy trial right. . .  is entitled to strong evidentiary weight."  *Id.* Consequently, this factor also

weighs against the government.[7]

The foregoing factors when combined weigh heavily against the government.  In so finding, this Court is guided by the Eleventh Circuit's decision in *United States v. Ingram*, 446 F.3d 1132 (11th Cir. 2006, a case very similar to the case at hand.  In *Ingram*, the appellate court considered the extent of pre-indictment delay (2 ½ years) coupled with post-indictment delay (2 years) in determining how heavily to weigh the delay against the government.  The court concluded that the post-indictment delay should be weighed more heavily because of the lengthy pre-indictment delay. *Id.* at 1339. Next, like the efforts made in *Ingram*, the efforts to locate and arrest the defendant in this case demonstrate a lack of diligence.  Here, the defendant's parents were contacted, computer databases were searched (to no avail), and the outstanding warrant was entered into NCIC.  That is the sum total of the action taken by law enforcement to apprehend the defendant.  In *Ingram*, the court also found the delay less tolerable because the crime charged–lying on a firearms application--was not a complex one.  *Id.* (citing *Barker* for proposition that only a shorter delay is acceptable for ordinary street crime than for more complex charges).  Finally, although defendant did not assert his right to a speedy trial within the deadline for filing pretrial motions, he cannot be said to have slept on that right, having asserted it just more than a month after his arrest.  Because the combined factors weigh heavily against the government, the defendant need not establish actual

---

[7]Arguably, defendant's assertion of his right might be entitled to slightly less weight because he did not file it within the deadline for filing pretrial motions.  However, he had only 11 days after arrest to file pretrial motions according to the time limits set in the order on arraignment.  During that time defendant announced his intention to plead guilty and was set for a guilty plea.  Defendant asserted his speedy trial right by filing a motion to dismiss immediately after counsel informed the Court that his client would not plead guilty after all.

prejudice,[8] and the motion to dismiss is due to be granted.  *Id.*

**Conclusion**

The government's post-indictment delay in arresting the defendant violated the defendant's

right to a speedy trial.  Accordingly, it is **ORDERED** that the motion to dismiss be and hereby is

**GRANTED**.

**DONE** this the 10th  day of April, 2007.


*s/Charles R. Butler, Jr.*
**Senior United States District Judge**

---

[8]Although the defendant has attempted to show prejudice by his inability to subpoena
Willie Brown as a trial witness–albeit with a minimal likelihood that Brown's testimony would be
favorable to the defendant–it is not necessary to factor this speculative evidence of prejudice into
the Sixth Amendment analysis since the facts in this case give rise to the presumption of prejudice.